IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN SHAPIRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 6854 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| RESIDENTIAL HOMES FOR RENT, LLC ) | |
| d/b/a SECOND AVENUE GROUP and ) | |
| MICHAEL ROTHMAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion to compel arbitration, which is granted for the reasons explained below.

## BACKGROUND

Justin Shapiro brought this action for intentional infliction of emotional distress and violation of the Family and Medical Leave Act ("FMLA") against his former employer, Residential Homes for Rent, LLC, doing business as Second Avenue Group ("Second Avenue") and Second Avenue's Chief Executive Officer, Michael Rothman.[1] Plaintiff alleges that after he underwent surgery to remove a cancerous brain tumor in March 2022, had additional medical treatment, and then sought to take FMLA leave, defendants refused to allow him leave and unexpectedly terminated his employment in August 2022. He further alleges that defendants increasingly made job-related demands of him, told other employees about his medical condition, terminated his health insurance and delayed in providing him related information, and contested his claim for unemployment benefits.

Defendants move to compel arbitration or in the alternative for dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

Defendants contend that the Court should compel plaintiff to arbitrate his claims pursuant to his employment agreement (the "Agreement") with Second Avenue. The Agreement, which refers to Second Avenue as the "Company," states as follows in relevant part:

---

[1] Rothman is also plaintiff's former father-in-law. (ECF No. 10, Defs.' Mem. Supp. Mot. Compel at 1; ECF No. 15, Pl.'s Resp. Defs.' Mot. Compel at 1.)

> Arbitration. Any legal or equitable claim or controversy arising out of or relating to your employment by the Company or the termination of that employment (whether by you or the Company) shall be subject to and resolved by binding arbitration in accordance with the Federal Arbitration Act ("AAA") [sic] and the National Rules for the Resolution of Employment Disputes of the American Arbitration Association which are then in effect (the "Rules"). Without limiting the generality of the foregoing sentence, the claims to which this provision shall apply include, but are not limited to: (i) any claims arising out of or related to this Agreement or breach thereof; (ii) any claims arising under any law, statute, ordinance, or under federal common law or the common law of any state, regarding employment, compensation, employee benefits, discrimination, retaliation, harassment, or denial of equal employment opportunity based on sex, race, color, national origin, religion, age, disability or handicap, marital status, or any other category protected by applicable law; [and] (iii) any claims arising under the common law of the United States or any state relating to your employment with the Company, including, without limitation, any claims alleging breach of contract, promissory estoppel, fraud, misrepresentation, negligence, defamation, public policy tort, or infliction of emotional distress . . . . [Y]ou and the company expressly waive any right to resolve any dispute covered by this Agreement to arbitrate by filing suit in court for trial by a judge or jury.

(ECF No. 10-1, Agreement, at 2-3 (bold type omitted).)[2]

The FAA governs the enforcement of arbitration agreements and states that a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). It "evinces a national policy favoring arbitration" and "requires federal courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). To compel arbitration, a movant must show "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). "Once the party seeking arbitration has shown those elements, the burden shifts to the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable or that the claims are unsuitable for arbitration." *Mecum v. Weilert Custom Homes, LLC*, 239 F. Supp. 3d 1093, 1095 (N.D. Ill. 2017).

There is an arbitration agreement here, and plaintiff has refused to arbitrate. Defendants assert that the agreement applies to all of plaintiff's claims. In response to defendants' motion, plaintiff does not contest that (1) he entered into the Agreement with Second Avenue; (2) it is valid and enforceable; (3) he is bound by its arbitration provision and his claims are suitable for

---

[2] The Court may consider documents outside the pleadings in ruling on a motion to compel arbitration. *Johnson v. Mitek Sys., Inc.*, No. 22 C 349, 2022 WL 1404749, at *1 (N.D. Ill. May 4, 2022).

arbitration; or (4) he is bound to arbitrate his claims against Second Avenue. Plaintiff therefore concedes these issues. *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (failure to respond to an argument results in waiver).

The only argument plaintiff raises with regard to arbitration is that his claims against Rothman do not fall within the scope of the arbitration provision because Rothman is not a party to the Agreement and thus has no right to enforce it.[3] A nonparty's right to enforce an arbitration agreement is governed by state law. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). The parties appear to agree that the substantive law of Illinois governs. In Illinois, a nonparty to a contract "typically has no right to invoke an arbitration provision contained in that contract," but "there are recognized exceptions to that general rule," including the theory of agency that defendants rely upon here. *See id.* at 639. Defendants contend that as CEO, Rothman can enforce the Agreement as an agent of Second Avenue.[4]

"Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000). It is clear from the allegations of the complaint and from the Agreement that there is a principal-agent relationship between Second Avenue and Rothman. Rothman, to whom plaintiff reported directly, is employed as Second Avenue's CEO. (ECF No. 1, Compl. ¶¶ 1, 14.) Furthermore, the Agreement itself demonstrates that Rothman has the power to conduct legal transactions for Second Avenue; it states that plaintiff would be "reporting to Michael Rothman, Chief Executive Officer" and was signed by Rothman in his capacity as CEO. (Agreement at 1, 4.)

Plaintiff does not directly address the two prongs of agency, nor does he dispute that as a general proposition, Rothman is an agent of Second Avenue. He argues, however, that Rothman was acting with animosity and not "in a true agency capacity" when he "targeted" plaintiff "on the basis of their personal and familial relationship" and "used his title as CEO as a vehicle to behave outrageously towards Plaintiff." (Pl.'s Resp. Defs.' Mot. Compel at 3, 5.) In plaintiff's view, the agency exception under which a nonparty can enforce an arbitration agreement applies only when the alleged misconduct was "committed exclusively . . . for the benefit and at the direction of the company" and not when the conduct at issue can be characterized as "personal." (*Id.* at 4-6.) There are two problems with this argument. First, plaintiff cites no authority for this gloss on the requirements to establish agency for purposes of the exception or for the proposition that

---

[3] Plaintiff notes that before defendants filed their motion to compel, he offered to either "bifurcate matters" by arbitrating his claims against Second Avenue while proceeding in court against Rothman or proceed in court against both defendants. (Pl.'s Resp. Defs.' Mot. Compel at 2 n.1.)

[4] As an initial matter, Rothman contends that the question of whether he as a third party to the Agreement can enforce it is one for the arbitrator, not the Court. The Court disagrees, for the reasons expressed by its colleagues in *O'Connor v. Ford Motor Co.*, No. 19 C 5045, 2023 WL 130522, at *6 (N.D. Ill. Jan. 9, 2023), and *Giron v. Subaru of America, Inc.*, No. 22 C 75, 2022 WL 17130869, at *3-4 (N.D. Ill. Nov. 21, 2022).

speculation about Rothman's motives is relevant to the analysis of whether he can enforce the arbitration provision. Second, plaintiff's reasoning contradicts the fact that his claims against Rothman are premised on conduct that occurred within the scope of Rothman's agency. Plaintiff alleges that Rothman engaged in "vicious conduct" by increasing his workload, denying him medical leave, terminating his employment, disseminating his medical information to other employees, and delaying the delivery of his health-insurance paperwork. (*Id.* at 1-2, 5.) As defendants point out, as asserted against Rothman, plaintiff's FMLA claims (the basis of his invocation of federal jurisdiction) necessarily entail a theory that Rothman was acting in Second Avenue's interest. *See Eppinger v. Caterpillar Inc.*, 682 F. App'x 479, 481 (7th Cir. 2017) (noting that an individual can be liable for a violation of the FMLA when "acting in the employer's interest"). As for intentional infliction of emotional distress—a claim plaintiff brings against both Rothman and Second Avenue—plaintiff expressly alleges in that claim that "Rothman *as the CEO of Second Avenue* engaged in extreme and outrageous conduct directed toward" him. (Compl. ¶ 51 (emphasis added).) Plaintiff cannot have it both ways. *See Martini v. Bicycle Health Inc.*, No. 22-CV-1509-JPS, 2023 WL 2743913, at *5-6 (E.D. Wis. Mar. 31, 2023) (applying Illinois law to compel arbitration of plaintiff's FLSA claims against her employer and its CEO, a nonparty to the arbitration agreement, and noting that plaintiff could not "rely on what she has pleaded in order to maintain her claims against all Defendants in federal court, and simultaneously disown that which she has pleaded when it conveniences her to do so" to avoid arbitration).

The complaint and the Agreement support Rothman's agency relationship with Second Avenue, and plaintiff submits no evidence to the contrary, so Rothman, like Second Avenue, is entitled to enforce the arbitration provision in the Agreement. All of plaintiff's claims in this action are subject to arbitration pursuant to the Agreement and the FAA. Given this ruling, the Court need not reach defendants' arguments in the alternative for dismissal of the complaint under Rule 12(b)(6).

## CONCLUSION

Defendants' motion to compel arbitration [9] is granted. Arbitration shall proceed. This lawsuit is administratively dismissed without prejudice subject to full reinstatement, if requested by either party, upon conclusion of the required arbitration. *See Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017). Civil case terminated.

**DATE:** May 12, 2023

_____
**Hon. Ronald A. Guzmán**
**United States District Judge**